UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | | |
|---|---|---|
| GREGORY P. WARGER, | ) | CIV. 08-5092-JLV |
| | ) | |
| Plaintiff, | ) | ORDER DENYING |
| | ) | PLAINTIFF'S MOTION FOR |
| vs. | ) | JUDGMENT AS A MATTER |
| | ) | OF LAW OR NEW TRIAL |
| RANDY D. SHAUERS, | ) | |
| | ) | |
| Defendant. | ) | |

**INTRODUCTION**

Pending before the court is plaintiff's motion for judgment as a matter of law or, in the alternative, for a new trial. (Docket 170). Defendant resists the motion in its entirety. (Docket 180). For the reasons set forth below, the court denies plaintiff's motion.

**FACTS AND PROCEDURAL HISTORY**

The court limits its recitation to those facts necessary to resolve the pending motion. If needed, the court shall provide additional facts in its discussion of the merits of the motion.

On August 4, 2006, plaintiff Gregory P. Warger and defendant Randy D. Shauers were involved in a motor vehicle collision on U.S. Highway 385 in Pennington County, South Dakota. (Docket 1 at ¶¶ 5-7). At the time of the collision, Mr. Warger was operating a motorcycle and Mr. Shauers was operating a three-quarter ton pickup pulling a 28-foot long camper trailer. Id. at ¶¶ 5-6. The collision resulted in serious injury to Mr. Warger, including but

not limited to the loss of his lower left leg.  Id. at ¶ 9.  On December 12, 2008,

Mr. Warger filed suit against Mr. Shauers, asserting a claim of negligence and

seeking to recover for property damage, present and future lost wages, present

and future pain and suffering, loss of enjoyment of life, permanent disability,

present and future medical expenses, and prejudgment interest.  Id. at pp. 2-3.

Mr. Shauers denied the allegations and asserted various affirmative defenses,

most prominent of which was contributory negligence.[1]  Both parties asserted

their right to a jury trial.  (Dockets 1 at p. 4 & 6 at p. 3).

A jury trial commenced on July 20, 2010.[2]  On July 22, 2010, the court

declared a mistrial as a result of a violation of the court's *in limine* order by

counsel for Mr. Shauers.  (Docket 104).  A second trial commenced on

September 20, 2010.  On September 29, 2010, the jury returned a verdict in

favor of Mr. Shauers.  (Docket 159).  The same day, the Clerk of Court entered

judgment in favor of Mr. Shauers and against Mr. Warger.  (Docket 162).  On

October 25, 2010, Mr. Warger filed a motion for judgment as a matter of law

pursuant to Fed. R. Civ. P. 50 or, in the alternative, for a new trial pursuant to

Fed. R. Civ. P. 59.  (Docket 170; see also Dockets 171 & 182).  Mr. Shauers

resisted the motion.  (Docket 180).

---

[1]Mr. Shauers also asserted a counterclaim for property damage, which he
voluntarily dismissed before the first trial.  (Docket 98 at p. 1).  Mr. Shauers
also voluntarily abandoned the affirmative defenses of failure to mitigate and
assumption of the risk.  Id.

[2]During both trials, Mr. Warger appeared in person and by his counsel,
Steven C. Beardsley and Travis B. Jones.  Mr. Shauers appeared in person and
by his counsel, Ronald Ray Kappelman and Gregory G. Strommen.

2

## DISCUSSION

Mr. Warger raised three grounds in support of his motion: (1) the verdict was against the weight of the evidence; (2) the verdict was the product of the misconduct of Mr. Shauer's counsel; and (3) the verdict was the product of juror misconduct.  (Docket 171).  The court shall address each argument in turn.

### A.    Whether the Verdict was Against the Weight of the Evidence

When resolving a motion for judgment as a matter of law under Fed. R. Civ. P. 50, the court must determine whether there is sufficient evidence to support the jury's verdict.[3]  Anderson Marketing, Inc. v. Maple Chase Co., 241 F.3d 1063, 1065 (8th Cir. 2001).  The court must view the evidence in a light most favorable to the prevailing party and must give great deference to the jury's verdict.  Id.; Howard, 615 F.3d at 995.  Further, the court "must not engage in a weighing or evaluation of the evidence or consider questions of credibility."  Howard, 615 F.3d at 995 (citation and internal quotation marks omitted); see also White v. Pence, 961 F.2d 776 (8th Cir. 1992) (same) (discussing in detail the difference between motions for judgment notwithstanding the verdict[4] and motions for new trial).  The court will not

---

[3]The United States Court of Appeals for the Eighth Circuit reviews *de novo* the district court's decision to grant or deny a motion for judgment as a matter of law.  Howard v. Missouri Bone & Joint Center, Inc., 615 F.3d 991, 995 (8th Cir. 2010).  In reviewing this type of motion, the Eighth Circuit uses the same standards as the district court.  Id.

[4]A motion for judgment as a matter of law encompasses a motion for directed verdict and a motion for judgment notwithstanding the verdict. Keenan v. Computer Associates International, Inc., 13 F.3d 1266, 1268, n. 2 (8th Cir. 1994).  The court uses the same standards when reviewing such motions, regardless of their nomenclature.  Id.

reverse a jury's verdict unless it finds "no reasonable juror could have returned a verdict for the non-moving party." Anderson Marketing, Inc., 241 F.3d at 1065 (citation and internal quotation marks omitted); see also Structural Polymer Group, Ltd. v. Zoltek Corp., 543 F.3d 987, 991 (8th Cir. 2008) ("In reviewing the sufficiency of the evidence to support the jury's verdict, [the court] interpret[s] the record in a light most favorable to the prevailing party, affirming unless no reasonable juror could have reached the same conclusion."). "Judgment as a matter of law is appropriate only when all of the evidence points one way and is susceptible of no reasonable inference sustaining the position of the nonmoving party." Howard, 615 F.3d at 995 (citation and internal quotation marks omitted).

The standard for granting a new trial under Fed. R. Civ. P. 59 is even higher. Id. The "decision to grant a new trial lies within the sound discretion of the trial court."[5] Id. The court should grant a new trial only to avoid a miscarriage of justice. Id.; see also Structural Polymer Group, Ltd., 543 F.3d at 991 ("A new trial motion premised on a dispute about the strength of the supporting proof should be granted only if the verdict is against the weight of the evidence and allowing it to stand would result in a miscarriage of justice.") (citation and internal quotation marks omitted). Unlike a motion for judgment

---

[5]The Eighth Circuit reviews the district court's decision to grant or deny a motion for a new trial under an abuse of discretion standard. Howard, 615 F.3d at 995; Structural Polymer Group, Ltd., 543 F.3d at 991. "Where the basis of the motion for a new trial is that the jury's verdict is against the weight of the evidence, the district court's denial of the motion is virtually unassailable on appeal." Howard, 615 F.3d at 995 (citations and internal quotation marks omitted).

as a matter of law, in evaluating a motion for a new trial, the court "can rely on its own reading of the evidence–it can weigh the evidence, disbelieve witnesses, and grant a new trial even where there is substantial evidence to sustain the verdict." White, 961 F.2d at 780 (citation and internal quotation marks omitted).

Armed with an understanding of the standards governing motions for judgment as a matter of law and motions for a new trial, the court now turns to the merits of Mr. Warger's claim.

The jury returned a verdict in favor of Mr. Shauers. (Docket 159). In order to do so, as instructed by the court in its final jury instructions, the jury had to have found Mr. Shauers was not negligent, or his negligence was not a legal cause of Mr. Warger's injuries, or both parties were negligent, but Mr. Warger's negligence was more than slight in comparison to Mr. Shauers. See Docket 160 at pp. 30-31 (pp. 29-30 of the instructions). The court also instructed the jury (1) Mr. Warger had the burden to prove by the greater convincing force of the evidence Mr. Shauers was negligent, his negligence was the legal cause of Mr. Warger's injuries, and the amount of damages, if any, legally caused by Mr. Shauers' negligence and (2) Mr. Shauers had the burden to prove by the greater convincing force of the evidence Mr. Warger was contributorily negligent. (Docket 160 at p. 10; p. 9 of the instructions). In light of these governing principles, the court finds there was sufficient evidence for a reasonable jury to return a verdict in favor of Mr. Shauers and to find by the greater convincing force of the evidence Mr. Shauers was not negligent or, if he

was negligent, Mr. Warger was contributorily negligent more than slight.  See Anderson Marketing, Inc., 241 F.3d at 1065 (The court will not reverse a jury's verdict unless it finds "no reasonable juror could have returned a verdict for the non-moving party.") (citation and internal quotation marks omitted).

In support of its finding, the court looks to the evidence admitted at trial. The evidence on the issue of liability consisted of exhibits and the testimony of lay witnesses Clint Elmore, Lieutenant David Berkley, Mr. Shauers, and Michelle (Misty) Shauers and expert witnesses Brad Booth and Dr. Jubal Hamernik.[6]  (Docket 163).  The court shall provide a brief summary of each witness's testimony.

Mr. Elmore testified he was traveling northbound on Highway 385 on his motorcycle when he saw Mr. Warger stop at the stop sign on the north fork of the Y intersection between Sheridan Lake Road and Highway 385, enter Highway 385 and travel south for a short distance, turn his left blinker on, and set up to stop in order to return to Sheridan Lake Road by virtue of a left turn onto the south fork of the Y intersection.  Mr. Elmore testified he observed Mr. Warger's vehicle travel southbound on Highway 385 at a fast rate of speed.  Mr. Elmore testified he noticed Mr. Shauer's was looking to the right and was concerned Mr. Shauers would not be able to stop in time.  Mr. Elmore observed the collision in his rear-view mirror and returned to assist.  Mr. Elmore provided a statement to Lieutenant Berkley at the scene of the collision.

---

[6]Mr. Warger testified only with respect to damages.  Given the impact of the collision and the injuries he sustained, Mr. Warger could not remember any of the events immediately preceding or following the collision.

Mr. Elmore believed Mr. Warger had sufficient time to safely enter Highway 385.

Mr. Kappelman vigorously cross-examined Mr. Elmore.  On cross-examination, Mr. Kappelman impeached Mr. Elmore's ability to see the events surrounding the collision and his memory of the events.  Mr. Elmore testified the events surrounding the collision occurred during a matter of seconds, at a 90 mile per hour closing speed from his perspective, during busy traffic, and while he was paying attention to his own driving.  Mr. Kappleman questioned Mr. Elmore regarding the written statement he provided to Lieutenant Berkley at the scene of the accident.  Mr. Elmore admitted he did not include in his written statement most of the details about which he testified.  He did not indicate in his written report that Mr. Warger stopped at the north fork of the Y intersection before turning onto Highway 385, that Mr. Warger put his blinker on as soon as he turned onto Highway 385, that Mr. Shauers was traveling too fast, would not be able to stop in time, and was looking to the right. Mr. Elmore provided statements a week after the collision and then three months after the collision and did not indicate Mr. Shauers was looking to the right.  Mr. Elmore first stated Mr. Shauers was looking to the right during Mr. Elmore's deposition approximately three years after the collision.

Lieutenant Berkley of the South Dakota Highway Patrol testified regarding his observations at the scene of the collision and the steps he took to collect evidence.  Lieutenant Berkley arrived at the scene approximately twenty minutes after the collision.  He observed a motorcycle lying in the ditch along

7

the southbound lane of Highway 385 and observed skid marks from Mr. Shauers' vehicle starting from the southbound lane through the northbound lane toward the area where the motorcycle rested.  He also observed the skid marks caused by the path of travel of Mr. Warger's motorcycle.  The skid marks began near the center line of the highway. Lieutenant Berkley photographed all the skid marks.  He was aware Mr. Shauers' trailer sustained damages to its right corner.

Mrs. Shauers testified in both parties' cases-in-chief.  Mrs. Shauers testified regarding the checklist she and Mr. Shauers perform on their truck and camper before taking any trip, including the trip to South Dakota. Mr. Shauers drove approximately 15,000 miles before the collision. Mrs. Shauers testified Mr. Shauers was a very safe driver who pays attention to the roadway and is always aware of other vehicles.  When Mrs. Shauers asked Mr. Shauers to look at a feature along the road, Mr. Shauers refused because he needed to pay attention to the roadway.  Mrs. Shauers has rules for her children to follow when in the vehicle.  She does not allow raised voices, sudden movements, or screams and does not allow the children to move around inside the vehicle.  Mrs. Shauers testified Mr. Shauers was driving between 45 to 50 miles per hour before braking to avoid Mr. Warger. Mrs. Shauers testified regarding the other traffic on the roadway, including a truck with a slide-in camper traveling in front of them.

Mrs. Shauers testified she noticed traffic increased as they approached the intersection of Sheridan Lake Road and Highway 385.  She turned around

to check on her children for a few minutes and felt Mr. Shauers apply the brakes and subtly steer toward the center line of the highway. Mrs. Shauers looked forward and saw a motorcycle go from the right side of their lane to the center of the lane, then stop, and the motorcycle rider turned around and looked at her and raised his arm as if recognizing he made a traffic error. She did not see Mr. Warger at the Y intersection or enter the highway. She testified Mr. Shauers swerved to the center line and straddled the center line when he struck Mr. Warger. Mrs. Shauers did not know from which fork of Sheridan Lake Road Mr. Warger entered Highway 385. Right after the collision, Mr. Shauers told her Mr. Warger pulled out in front of them. In Mrs. Shauers' opinion, Mr. Shauers did not have adequate time and distance to avoid hitting Mr. Warger.

Mr. Jones cross-examined Mrs. Shauers and impeached her with prior inconsistent statements provided during her deposition. Mr. Jones pointed out inconsistencies in her testimony regarding other traffic, Mr. Shauers' speed at the time of impact, and the location of Mr. Warger when she first observed him.

Mr. Shauers testified in both parties' cases-in-chief. Mr. Shauers testified in great detail regarding his driving experience and training and his experience teaching his co-workers safe driving techniques. He testified regarding the safety inspection he made of his vehicle every time before traveling on the road. He testified regarding his memory of the events surrounding the collision. He testified traffic was heavy in both lanes, with a high amount of motorcycle travel. He testified he was traveling southbound on

9

Highway 385.  When Mr. Shauers crested the hill approaching the Y intersection, he was traveling around 50 miles per hour.  The speed limit in that area was 55 miles per hour.  Approximately halfway down the hill, the road was at about a 5 percent grade.  Given the configuration of the roadway, he could not see the intersection until he was about halfway down the hill. Mr. Shauers testified there was a vehicle with a slide-in camper traveling directly in front of him–slightly more than four to six seconds ahead of Mr. Shauers.  Mr. Shauers testified he was not distracted in any way and was paying attention to and focused on his driving and the roadway.

Mr. Shauers did not begin to apply his brakes until he saw Mr. Warger. He was approximately 100 feet away or three to five seconds away from Mr. Warger when he first saw him.  Mr. Shauers testified he did not see Mr. Warger until he entered the highway, that is, until Mr. Warger was in the northbound lane of the highway.  He did not see Mr. Warger stopped at the intersection, but he assumed Mr. Warger ran the stop sign.  Mr. Shauers testified he saw Mr. Warger travel onto Highway 385 perpendicular from the south fork of Sheridan Lake Road oriented toward the southbound lane of Highway 385.  Mr. Shauers testified Mr. Warger pulled out in front of him, then turned to the left, almost reaching the right shoulder, and curved back to the right oriented south.  Mr. Shauers testified Mr. Warger applied his brakes.  As Mr. Warger crossed the center line and entered the southbound lane of the highway, Mr. Shauers testified he braked hard and moved to the left toward the oncoming lane.  Mr. Shauers did not press his horn to warn Mr. Warger of his

10

approach.  Mr. Shauers straddled the center line because there was another vehicle coming from the opposite direction.  Mr. Shauers collided with Mr. Warger.  Mr. Shauers came to a stop, exited the vehicle, asked Mrs. Shauers to move the truck and trailer out of the road, and ran to Mr. Warger to assist.

Mr. Beardsley vigorously questioned Mr. Shauers on direct examination as an adverse witness and on cross-examination.  Mr. Bearsley impeached Mr. Warger with his prior inconsistent statements regarding, but not limited to, the location of Mr. Warger when Mr. Shauers first saw him, the path of travel of Mr. Warger, Mr. Shauers' attentiveness to the road, the presence of other vehicles on the roadway, and Mr. Shauers' statements Mr. Warger ran the stop sign and/or failed to yield.

Mr. Booth, an accident reconstructionist, gave extensive testimony in this case, subject to lengthy cross-examination.  Mr. Booth testified as to his qualifications, education, and training.  He explained how he conducted his analysis and interpreted the evidence, the measurements he took and calculations he reached, and how he created various diagrams.  To summarize, in Mr. Booth's opinion, the evidence did not support Mr. Shauers' version of events, but rather was consistent with Mr. Elmore's version of events. Mr. Booth testified Mr. Shauers had sufficient time and distance to break, come to a stop, and stay in his lane without colliding with Mr. Warger.

Dr. Hamernik, an engineer who specializes in forensic engineering and accident reconsutruction, also provided extensive testimony in this case, again

subject to lengthy cross-examination.  Dr. Hamernik testified as to his
qualifications, education, and training.  He testified as to the materials he
reviewed to form his opinions and his methodology, which was different from
the methodology used by Mr. Booth.  Dr. Hamernik testified, regardless from
which fork Mr. Warger entered the highway, by the time any driver in
Mr. Shauers' position could have seen Mr. Warger and recognized the hazard,
he would not have had sufficient time and distance to stop before impact.
Dr. Hamernik opined the only course open to Mr. Shauers was to attempt to
swerve and Mr. Warger created an emergency situation for Mr. Shauers.
Dr. Hamernik opined, even if Mr. Elmore's version of events was correct,
Mr. Warger did not have sufficient time and distance to safely enter the
highway, travel a short distance south, stop, and then attempt to turn back
onto Sheridan Lake Road.

Like many civil trials, the evidence included conflicting lay witness
testimony and the battle of the experts.  The court is cognizant of the
standards governing a motion for judgment as a matter of law.  The court must
not reweigh the evidence or assess the credibility of the witnesses.  Howard,
615 F.3d at 995.  Significantly, the court must view the evidence in a light
most favorable to Mr. Shauers as the prevailing party and must give great
deference to the jury's verdict.  Anderson Marketing, Inc, 241 F.3d at 1065.  In
light of these standards, the court rejects Mr. Warger's challenge to the
sufficiency of the evidence and finds the evidence presented at trial was
sufficient to sustain a finding Mr. Shauers was not negligent or, if he was

negligent, Mr. Warger was contributorily negligent more than slight.  The jury's verdict must stand.

Similarly, the court finds Mr. Warger cannot meet the even higher standard to justify a new trial.  In reaching this decision, the court weighed the evidence and assessed the credibility of the witnesses.  See White, 961 F.2d at 780.  The court finds the conflicting testimony was not the result of intentional falsehoods on the part of any witness.  The collision occurred in a matter of seconds in an area of high traffic.  Witnesses' perceptions of the incident naturally may differ and may change through time.  The court finds the jury's verdict accurately reflects the weight of the evidence and the burdens of proof.  The court does not find a miscarriage of justice occurred in this case.  See Howard, 615 F.3d at 995.

**B.      Whether the Verdict was the Product of Counsel's Conduct**

During the July 16, 2010, pretrial conference before the first trial, the court ruled expert witnesses could offer opinion testimony as to a driver's conduct, but could not offer legal opinions as to whether such conduct violated the laws and rules of the road of South Dakota.  (Docket 98 at p. 1).  During the second trial, in a hearing outside the presence of the jury toward the end of the direct examination of Mr. Booth on September 22, 2010, the court reiterated Mr. Booth could not offer an opinion as to whether any driver violated the rules of the road by failing to yield or failing to pay attention to his driving.  Counsel for both parties indicated they understood the court's ruling.  However, during cross-examination of Mr. Booth later that same day,

Mr. Kappelman asked Mr. Booth the following question: "Mr. Warger has to yield the right-of-way and not enter Highway 385 until he's certain that the highway is free of oncoming traffic, isn't that correct?"  (Exhibit A at p. 2, lines 4-6).

Before Mr. Booth answered the question, Mr. Jones objected.  The court held a hearing outside the presence of the jury.  During the hearing, Mr. Jones argued Mr. Kappelman's question was in direct violation of the court's *in limine* order and moved for a mistrial on behalf of Mr. Warger.  The court found Mr. Kappelman's question to be improper.  The court warned Mr. Kappelman it was "not going to mistry this case again if [the court] can help it, but [the court] will mistry [the case] if [counsel] either intentionally or recklessly ask questions and put matters before this jury that I have excluded."  Id. at p. 6, lines 1-4.  In response to the court's directive, plaintiff's counsel did not renew the motion for mistrial, but rather stated he would ask for a directed verdict if another violation occurred.  When the jury returned to the courtroom and the trial resumed, the court sustained Mr. Jones' objection and directed the jury to disregard the question.

Mr. Warger argues Mr. Kappelman's question prejudiced his case to such a degree as to require a new trial.  (Docket 171 at pp. 8-10).  Mr. Warger argues such prejudice "is obvious" from the jury's verdict.  Id. at p. 9.  Mr. Warger also alleges Mr. Kappelman compounded the prejudice by suggesting in his closing argument Mr. Warger had a duty to yield to traffic on Highway 385.  Id.  The court finds Mr. Warger's position unpersuasive.

When addressing a motion for new trial premised on an alleged violation of a district court's *in limine* order, the Eighth Circuit established the following guiding principles:

> In order for a violation of an order granting an in limine motion to serve as a basis for a new trial, the order must be specific in its prohibition and the violation must be clear. Further, a new trial may follow only where the violation has prejudiced the parties or denied them a fair trial. Prejudicial error is error which in all probability produced some effect on the jury's verdict and is harmful to the substantial rights of the party assigning it.

Pullman v. Land O'Lakes, Inc., 262 F.3d 759, 762 (8th Cir. 2001) (internal citations omitted).

The court finds its *in limine* order was specific in its prohibition. The court further finds Mr. Kappelman clearly violated the court's directive by asking Mr. Booth to provide a legal opinion as to the rules of the road. However, the court does not find Mr. Kappelman's question prejudiced Mr. Warger in any meaningful way or denied him a fair trial. First, Mr. Booth never answered Mr. Kappelman's question. If he had, the prejudicial impact of an answer given by an expert witness may well be high. Second, the court sustained Mr. Jones' objection and immediately instructed the jury to disregard the question. See Black v. Shultz, 530 F.3d 702, 707 (8th Cir. 2008) (finding district court did not abuse its discretion in denying defendants' motion for a new trial due to a violation of an *in limine* order when the district court, in part, instructed the jury the testimony was irrelevant and should be disregarded and the defendants did not suffer prejudice as a result of the violation); Couch v. ConAgra Foods, Inc., 64 Fed. Appx. 595, 596 (8th Cir.

15

2003) (affirming district court's decision to deny defendant's motion for a new trial in large part because "the court's curative instructions to the jury removed any potential prejudice or error from violation of the oral order in limine"). Importantly, in both its preliminary and final jury instructions, the court instructed the jury that statements, arguments, questions, and comments by counsel were not evidence; the jury must ignore a question to which the court sustained an objection and must not "try to guess what the answer might have been;" and testimony the court told the jury to disregard must not be considered. (Dockets 149 & 160). The court repeatedly instructed the jury they must decide the case based solely on evidence admitted during trial. See id.

Finally, the court reviewed Mr. Kappelman's closing argument. Although he argued Mr. Warger failed to yield to Mr. Shauers, he did not claim Mr. Booth or any expert witness gave such a legal opinion. Mr. Kappelman certainly had the right to argue Mr. Warger was contributorily negligent by failing to yield. The court's in limine order did not preclude defense counsel from arguing their theory of defense in closing argument. Cf. Vanskike v. ACF Industries, Inc., 665 F.2d 188, 209-10 (8th Cir. 1981) (finding district court abused its discretion in denying defendant's motion for a mistrial and remanding for a new trial when the evidence did not warrant the submission of punitive damages to the jury, but, in closing argument, plaintiff's counsel made an improper and inflammatory punitive damages argument, referenced a recent high-profile case where a jury awarded punitive damages, and invited the jury

16

to punish defendant and deter others from like conduct, all of which prejudiced defendant by resulting in an excessive award).  The court also notes it advised the jury closing arguments were not evidence.

The court finds Mr. Warger is not entitled to a new trial because the violation of the *in limine* order did not prejudice Mr. Warger or deny him a fair trial.  The court's repeated instructions to the jury cured any prejudice caused by Mr. Kappelman's single, unanswered question.

## C.   Whether the Verdict was the Product of Juror Misconduct

Mr. Warger's final argument centers around the conduct of the jury. Mr. Warger alleges juror misconduct occurred in the following two ways: (1) the jury foreperson deliberately lied during voir dire about her impartiality and ability to award damages if Mr. Warger satisfied his burden of proof on the issue of liability; and (2) the jury foreperson tainted jury deliberations by expressing untoward sympathy for Mr. Shauers and by swaying other jurors to do the same in violation of the court's jury instructions.  (Docket 171 at pp. 10-13).  In support of his allegations, Mr. Warger relies on an affidavit signed by Stacey Titus, a juror in this case, and dated October 25, 2010.  (Docket 171-1). After the trial concluded, Mr. Titus contacted counsel for Mr. Warger and expressed his concerns regarding during jury deliberations.  (Docket 170 at p. 10).  Memorialized in his affidavit, Mr. Titus' concerns are as follows:

> The biggest concern I had during jury deliberations was the attitude and comments by some of the jurors to not consider the facts and evidence of the case.  It was evident to me [Mr. Titus] that one juror, who ended up being the foreman, was influenced by her own daughter's experience, and not the facts, evidence, and law that was presented to us.

17

The juror, who ended up being the foreperson, during deliberations spoke about her daughter's experience, which included a motor vehicle collision in which her daughter was at fault for the collision and a man died.  She related that if her daughter had been sued, it would have ruined her life.  She further indicated that her daughter sat down and visited with the family of the deceased person and gave them flowers at the 5 year anniversary of the collision.

It is obvious that this juror was more concerned about the issues involving her daughter than she was the facts, evidence, and law presented by this Court and counsel.  It was apparent that this comment may have been made to and influenced other jurors because other jurors also expressed their concern about ruining the Shauers' life as they were a young couple.
. . . .

I am still concerned regarding the bias expressed by this juror.  I am concerned that the juror influenced other jurors by stating that her daughter's life would have been ruined if a lawsuit had been filed against her in her collision.

(Docket 171-1, ¶¶ 4-6, 8).

A court may grant a new trial if a party presents *admissible* evidence of juror bias.  McDonough Power Equipment, Inc. v. Greenwood, 464 U.S. 548, 554 (1984) (emphasis added).  Fed. R. Evid. 606 limits the court's inquiry, however.  Rule 606(a) establishes the general rule that a juror is not competent to testify as a witness on matters pertaining to the trial in which the juror sat.  See Fed. R. Evid. 606(a).  Rule 606(b) extends the general rule to inquiries into the validity of a verdict.  See Fed. R. Evid. 606(b).  This rule provides in pertinent part:

Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to

18

assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith.

Fed. R. Evid. 606(b) (2011).  The United States Supreme Court explained the

rationale of Rule 606(b) as follows:

> There is little doubt that postverdict investigation into juror misconduct would in some instances lead to the invalidation of verdicts reached after irresponsible or improper juror behavior.  It is not at all clear, however, that the jury system could survive such efforts to perfect it.  Allegations of juror misconduct, incompetency, or inattentiveness, raised for the first time days, weeks, or months after the verdict, seriously disrupt the finality of the process.  Moreover, full and frank discussion in the jury room, jurors' willingness to return an unpopular verdict, and the community's trust in a system that relies on the decisions of laypeople would all be undermined by a barrage of postverdict scrutiny of juror conduct.

Tanner v. United States, 483 U.S. 107, 120-21 (1987) (internal citations

omitted).

There are three exceptions to the rule expressed in Rule 606(b), only two

of which are relevant to this discussion.  During an inquiry into the validity of a

verdict, a juror may testify as to "whether extraneous prejudicial information

was improperly brought to the jury's attention" or "whether any outside

influence was improperly brought to bear on any juror."  Fed. R. Evid. 609(b)(2)

(2011).  The court must determine whether Mr. Titus' statements are

admissible as evidence of juror bias.  The court finds the information provided

by Mr. Titus does not fall in either exception to Rule 606(b) and, thus, cannot

be considered.

The court finds instructive and persuasive the opinion of the district

court in Lopez v. Aramark Uniform & Career Apparel, Inc., an employment

discrimination and sexual harassment case where the jury found in favor of plaintiffs.  417 F. Supp. 2d 1062 (N.D. Iowa 2006).  After trial, defense counsel contacted the jurors.  Id. at 1065.  One of the jurors, Juror French, stated she felt there was undue pressure during jury deliberations because two other female jurors revealed during deliberations they were victims of sexual abuse. Id.  Juror French stated 99 percent of why the verdict was so high was because of the two jurors' past sexual abuse.  Id.  The court examined whether this information was admissible so as to allow inquiry into "the subjective deliberative processes of a jury."  Id. at 1072.  The court found the information was not extraneous prejudicial information and, thus, did not fall within the exception to Rule 606(b).  Id.  The court reasoned as follows:

> Although the breadth of the exception is imprecise, it is clear that a juror may testify as to extra-record facts introduced into the jury room or the presence of an improper influence on the deliberations of the jury such as in the case of communications or contacts between jurors and litigants, the court, or other third parties.  In contrast, juror testimony regarding the subjective prejudices or improper motives of individual jurors has been held to be encompassed by the rule, as opposed to, as the defendant contends, within the exception.
> . . . .
>
> It is a fact that jurors will bring with them to deliberations their life experiences.  Indeed, how jurors perceive the evidence and judge the credibility thereof will be indubitably shaded by such experiences. When such information becomes part of the deliberative process, it becomes sacrosanct under Rule 606(b).  The situation complained of by the defendant in this case is not a situation in which a juror conducted outside research or was contacted by a third party and then relayed the information to fellow jurors.  This was simply a matter of two jurors drawing upon their prior life experiences and utilizing those experiences in the course of deliberations. Further inquiry, under Rule 606(b), is therefore, inappropriate.

Id. at 1072-73 (internal citations and quotation marks omitted).

The <u>Lopez</u> court cited with approval the decision of the United States Court of Appeals for the Fifth Circuit in <u>United States v. Duzac</u>.  In <u>Duzac</u>, defendants learned one or more jurors had certain prejudices because of prior personal experiences and moved for a new trial.  622 F.2d 911, 913 (5th Cir. 1980).  The Fifth Circuit found Rule 606(b) prohibited inquiry into the verdict and no exception applied, reasoning as follows:

> Here, there is no evidence that any external influence was brought to bear on members of the jury.  The prejudice complained of is alleged to be the product of personal experiences unrelated to this litigation.  The proper time to discover such prejudices is when the jury is being selected and peremptory challenges are available to the attorneys.  Although the jury is obligated to decide the case solely on the evidence, its verdict may not be disturbed if it is later learned that personal prejudices were not put aside during deliberations.  We therefore hold that the trial court acted properly in denying appellant's motion for a new trial.

<u>Id.</u>

The district court in <u>Marcavage v. Bd. of Trustees of Temple Univ.</u> reached a similar conclusion.  Following a verdict in favor of defendant, a juror contacted plaintiff's counsel and informed him of possible misconduct during jury deliberations.  400 F. Supp. 2d 801, 804 (E.D. Pa. 2005).  The juror indicated several jurors expressed bias toward Christians.  <u>Id.</u>  The court found this information was not admissible because it did not fall within any exception to Rule 606(b).  <u>Id.</u> at 805-06.  The court found the information was not extraneous.  "Extraneous influence has been found to include publicity received and discussed inside the jury room, consideration by the jury of evidence not admitted in court, and communications or other contact between

21

jurors and third persons, including contacts with the trial judge outside the presence of the [parties] and counsel." Id. at 805 (citing Gov't of Virgin Islands v. Gereau, 523 F.2d 140, 149 (3d Cir. 1975)).  The court found the religious bias expressed by some jurors consisted of personal experiences with individuals of various religious faiths.  "[L]ife experiences do not constitute extraneous prejudicial information and may be brought into the jury room." Id. (citing Wilson v. Vermont Castings, Inc., 170 F.3d 391, 395 n. 4 (3d Cir. 1999)).

The court also found plaintiff failed to present any evidence an outside influence was improperly brought to bear on the jury.  Id. at 806.  "[T]he scope of 'outside influences' is limited and applies only to those influences outside the evidence presented at trial, such as prejudicial publicity, pressure placed on jurors from outside sources, [and] use of extrajudicial information."  Id. (citing Tanner, 483 U.S. 107).  "Additionally, evidence of discussions among the jury, intimidation or harassment of a juror by another, along with other intra-jury influences fall within the prohibition of the rule not the exception and cannot be considered to impeach a verdict."  Id. (citing Gereau, 523 F.3d at 149).

The court finds the opinions of the Lopez, Duzac, and Marcavage courts to be persuasive and representative of the majority view.  The type of biases the foreperson allegedly expressed in this case, while unfortunate, do not fall within any exception to Rule 606(b).  See United States v. Benally, 546 F.3d 1230, 1236-38 (10th Cir. 2008), cert. denied, 130 S. Ct. 738 (2009) (describing

22

the type of information that falls within the enumerated exceptions to Rule 606(b) and collecting cases).  Mr. Warger cannot impeach the jury's verdict on the basis of this information.

Mr. Warger also seeks to use the affidavit of Mr. Titus to demonstrate the foreperson lied during voir dire.  Concealed juror bias may justify a new trial in limited circumstances.  See <u>McDonough Power Equipment, Inc. v. Greenwood</u>, 464 U.S. 548, 556 (1984); <u>United States v. Tucker</u>, 137 F.3d 1016, 1026 (8th Cir.1998).  The issue is whether Mr. Warger may use information obtained during jury deliberations to challenge a juror's responses in voir dire.

The United States Court of Appeals for the Tenth Circuit recently addressed this precise issue in <u>Benally</u>, a criminal case involving a Native American defendant convicted of assaulting an officer with a dangerous weapon.  546 F.3d at 1231.  After the jury announced its verdict, a juror approached defense counsel claiming the foreperson made racist claims against Native Americans and another juror agreed.  <u>Id.</u> at 1231.  The foreperson allegedly told the other jurors he used to live on or near an Indian reservation and " '[w]hen Indians get alcohol, they all get drunk,' and that when they get drunk, they get violent." <u>Id.</u>  Other jurors allegedly discussed the need to " 'send a message back to the reservation.' " <u>Id.</u> at 1232.  One of the jurors allegedly stated two of his family members were in law enforcement and he " 'heard stories from them about what happens when people mess with police officers and get away with it.' " <u>Id.</u>  A defense investigator received corroborating information from another juror.  <u>Id.</u>  Armed with all of this

information, defendant moved for a new trial on the basis certain jurors lied during voir dire and, during deliberations, improperly considered information not in evidence.  Id.  The district court admitted the juror testimony under the exceptions to Rule 606(b) and found two jurors lied on voir dire and the jury improperly considered extrinsic evidence of stories by one of the juror's law enforcement family members.  Id.  The district court granted a new trial, and the government appealed.  Id.

The Tenth Circuit found the district court erred in admitting the juror testimony about racial bias and about sending a message.  Id. at 1241.  The Tenth Circuit reversed the decision of the district court to grant a new trial and reinstated the jury verdict.  Id. at 1241-42.  In reaching its decision, the Tenth Circuit found the information fell within the ambit of Rule 606(b) because the jurors made the statements during the course of jury deliberations, regardless of the purpose for which defendant sought to use the information.  Id. at 1235.  Defendant argued he did not offer the testimony to inquire into the validity of the verdict, but rather to show certain jurors lied during voir dire.  Id.  The Tenth Circuit rejected this argument:

> Although the immediate purpose of introducing the testimony may have been to show that the two jurors failed to answer honestly during voir dire, the sole point of this showing was to support a motion to vacate the verdict, and for a new trial.  That is a challenge to the validity of the verdict.
>
> It is true that juror testimony can be used to show dishonesty during voir dire, for purposes of contempt proceedings against the dishonest juror.  Thus, if the purpose of the post-verdict proceeding were to charge the jury foreman or the other juror with contempt of court, Rule 606(b) would not apply.  However, it does not follow that juror

24

testimony that shows a failure to answer honestly during voir dire
can be used to overturn the verdict.

. . . .

[Defendant] seeks to use Juror K.C.'s testimony to question the
validity of the verdict.  The fact that he does so by challenging the voir
dire does not change that fact.  We agree with the government that
allowing juror testimony through the backdoor of a voir dire challenge
risks swallowing the rule.  A broad question during voir dire could
then justify the admission of any number of jury statements that
would now be re-characterized as challenges to voir dire rather than
challenges to the verdict.  Given the importance that Rule 606(b)
places on protecting jury deliberations from judicial review, we cannot
read it to justify as large a loophole as [defendant] requests.

Id. at 1235-36 (internal citations omitted); see also Marcavage, 400 F. Supp. 2d
at 807 ("Although Plaintiff asks this Court to consider statements made during
jury deliberations only as to whether a juror lied during voir dire, Plaintiff offers
no Rule of evidence, nor court decision in support of his request that this Court
make an exception as to the categorical prohibition against testimony on
matters and statements occurring during jury deliberations.  No case in any
circuit has required a court to consider inadmissible evidence when inquiring
as to whether a juror lied under voir dire. . . ."); but see Hard v. Burlington
Northern R.R., 812 F.2d 482, 485 (9th Cir. 1987) ("Statements which tend to
show deceit during voir dire are not barred by [Rule 606(b)," even if such
statements were made during jury deliberations.]; see also Williams v. Price,
343 F.3d 223, 235 & 236 n. 6 (3d Cir. 2003) (Alito, J.) (finding Hard was
inconsistent with Rule 606(b) and finding Rule 606(b)) "categorically bar[s]
juror testimony 'as to any matter or statement occurring during the course of
the jury's deliberations' even if the testimony is not offered to explore the jury's

decision-making process in reaching a verdict," but rather is offered to support a claim of juror misconduct during voir dire).  The Tenth Circuit in <u>Benally</u> went on to hold the juror statements did not fall within one of the enumerated exceptions to Rule 606(b), that is, the statements were not about extraneous prejudicial information or an outside influence, although they were "entirely improper and inappropriate."  546 F.3d at 1236-38.

The court finds the reasoning of the <u>Benally</u> and <u>Williams</u> courts persuasive.  To allow statements made during jury deliberations to be used to challenge a juror's conduct during voir dire would undermine the purpose of Rule 606(b) and runs counter to its directive.  Regardless of how Mr. Warger hopes to use the juror statements at issue, Rule 606(b) bars their admission unless the statements fall within one of the enumerated exceptions to Rule 606(b), which the court finds they do not.  Accordingly, the court denies Mr. Warger's request for a new trial on the basis of alleged juror misconduct.

## CONCLUSION

As discussed in this opinion, the court finds no legal cause to set aside the verdict and enter judgment as a matter of law for plaintiff or grant a new trial.  Accordingly, it is hereby

ORDERED that Mr. Warger's motion for judgment as a matter of law or for a new trial (Docket 170) is denied.

Dated March 28, 2012.

BY THE COURT:

/s/ *Jeffrey L. Viken*

JEFFREY L. VIKEN
UNITED STATES DISTRICT JUDGE